92 F.3d 968
 65 USLW 2154, 111 Ed. Law Rep. 762,
11 IER Cases 1799,
24 Media L. Rep. 2366, 96 Cal. Daily Op. Serv. 6145,
96 Daily Journal D.A.R. 10,092
 Dean COHEN, Plaintiff-Appellant,
v.
SAN BERNARDINO VALLEY COLLEGE; The Board of Trustees of San
Bernardino Community College District; Charles H. Beeman;
Lois J. Carson; Allen B. Gresham; Horace D. Jackson;
Carlton W. Lockwood, Jr.; Judith Valles, et al.,
Defendants-Appellees.
 No. 95-55936.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 8, 1996.
Decided Aug. 19, 1996.
 
 1
 Stephen F. Rohde, Rohde & Victoroff, Los Angeles, California, for plaintiff-appellant.
 
 
 2
 Susan J. Boyle, Littler, Mendelson, Fastiff, Tichy & Mathiason, San Diego, California, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Central District of California, Ronald S.W. Lew, District Judge, Presiding. D.C. No. CV 94-1083-RSWL.
 
 
 4
 Before: FERNANDEZ and TASHIMA, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 MERHIGE, Senior District Judge:
 
 5
 The Appellant Dean Cohen is a tenured professor at the San Bernardino Valley College (the "College"), a public community college established by the State of California. This controversy arose when, at the conclusion of grievance procedures initiated against Cohen by a student, the College determined that Cohen had violated its sexual harassment policy (the "Policy") and imposed various disciplinary penalties upon him.
 
 
 6
 Cohen filed the instant lawsuit on February 18, 1994 in the United States District Court for the Central District of California under 42 U.S.C. § 1983 against the College, the Board of Trustees of the College (the "Board"), the Faculty Grievance Committee of the College (the "Grievance Committee"), and various individual officials of the College for violation of his First and Fourteenth Amendment rights. Cohen asserts that he was punished for his classroom speech under a sexual harassment policy which gave him insufficient notice that his conduct was prohibited and that his rights to free speech, academic freedom, and due process were violated.
 
 
 7
 The district court dismissed the College, the Board, and the Grievance Committee from the lawsuit on the basis that these parties are immune under the Eleventh Amendment and are not "persons" under § 1983. Cohen does not appeal this aspect of the case.
 
 
 8
 The district court granted summary judgment as to each of the remaining individual officials with respect to the damages component of each of Cohen's claims based on the determination that the officials are entitled to qualified immunity. The district court also granted summary judgment to the individual officials with respect to the remaining injunctive aspects of Cohen's due process claim on the merits. Finally, after a bench trial based on a stipulated record, the district court entered judgment for the individual officials on the injunctive aspects of Cohen's First Amendment claim. Cohen appeals these rulings.
 
 
 9
 We conclude, as discussed below, that the Policy was unconstitutionally vague as applied to Cohen and therefore reverse in part the judgment of the district court and remand so that the officials of the College may be enjoined from punishing Cohen, under the Policy. We also conclude that the district court correctly determined that the various individual officials were entitled to qualified immunity from civil liability. Because it is not necessary so to do, we do not address Cohen's due process claim.
 
 I.
 
 10
 Cohen is a tenured professor at the College who has taught English and Film Studies there since 1968.
 
 
 11
 In the Spring of 1992, Cohen taught a remedial English class which is a prerequisite to other college-level English classes. One student in the class, who we shall refer to as "Ms. M.," became offended by Cohen's repeated focus on topics of a sexual nature, his use of profanity and vulgarities, and by his comments which she believed were directed intentionally at her and other female students in a humiliating and harassing manner. During this class Cohen began a class discussion on the issue of pornography and played the "devil's advocate" by asserting controversial viewpoints. Cohen has for many years typically assigned provocative essays such as Jonathan Swift's "A Modest Proposal" and discussed subjects such as obscenity, cannibalism, and consensual sex with children in a "devil's advocate" style. During classroom discussion on pornography in the remedial English class in the Spring of 1992, Cohen stated in class that he wrote for Hustler and Playboy magazines and he read some articles out loud in class. Cohen concluded the class discussion by requiring his students to write essays defining pornography. When Cohen assigned the "Define Pornography" paper, Ms. M asked for an alternative assignment but Cohen refused to give her one.
 
 
 12
 Ms. M stopped attending Cohen's class and received a failing grade for the semester. She subsequently complained about Cohen's statements and conduct to the chair of the English Department, asserting that Cohen had sexually harassed her. Ms. M subsequently filed a formal written student grievance against Cohen.
 
 
 13
 The College had recently implemented a new sexual harassment Policy and Cohen was apparently the first faculty member to face a grievance based on the Policy. The Policy states that:Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal, written, or physical conduct of a sexual nature. it includes, but is not limited to, circumstances in which:
 
 
 14
 1. Submission to such conduct is made explicitly or implicitly a term or condition of a student's academic standing or status.
 
 
 15
 2. Such conduct has the purpose or effect of unreasonably interfering with an individual's academic performance or creating an intimidating, hostile, or offensive learning environment.
 
 
 16
 3. Submission to or rejection of such conduct is used as the basis for academic success or failure.
 
 
 17
 The Grievance Committee held a hearing to determine whether Ms. M's complaint was well-founded. Both Cohen and Ms. M testified, submitted documents, and called witnesses on their own behalf. At the conclusion of the hearing, the Grievance Committee found that Professor Cohen had violated the College's policy against sexual harassment by creating a hostile learning environment. The Grievance Committee then recommended certain disciplinary actions to the President of the District.
 
 
 18
 The President of the District then issued a ruling which found Cohen in violation of the District's policy against sexual harassment. Among other things, the President found that Cohen engaged in "sexual harassment which had the effect of unreasonably interfering with an individual's academic performance or creating an intimidating, hostile or offensive work environment."
 
 
 19
 Both Cohen and Ms. M appealed the President's and Grievance Committee's decision to the Board which considered the matter at hearings in October and November of 1993. Cohen and Ms. M were represented by attorneys and each of them testified on their own behalf. In addition, students came forward to testify about the sexual nature of Cohen's teaching material and his frequent use of derogatory language, sexual innuendo, and profanity.
 
 
 20
 On November 17, 1993, the Board found that Cohen engaged in sexual harassment which unreasonably interfered with an individual's academic performance and created an intimidating, hostile, or offensive learning environment. The Board then ordered Cohen to:
 
 
 21
 1. Provide a syllabus concerning his teaching style, purpose, content, and method to his students at the beginning of class and to the department chair by certain deadlines;[1]
 
 
 22
 2. Attend a sexual harassment seminar within ninety days;
 
 
 23
 3. Undergo a formal evaluation procedure in accordance with the collective bargaining agreement; and
 
 
 24
 4. Become sensitive to the particular needs and backgrounds of his students, and to modify his teaching strategy when it becomes apparent that his techniques create a climate which impedes the students' ability to learn.
 
 
 25
 Cohen was, additionally, advised that further violation of the Policy would result in further discipline "up to and including suspension or termination" and the Board ordered that its decision be placed in Cohen's personnel file.
 
 II.
 A. First Amendment
 
 26
 The conclusion of the College was that Cohen had created a "hostile learning environment" by his sexually oriented teaching methods and had, therefore, violated the College's sexual harassment policy. The College took adverse employment action against Cohen based on this conclusion. Cohen asserts that his First Amendment rights have been violated. Constitutional issues are reviewed de novo. Destination Ventures, Ltd. v. FCC, 46 F.3d 54, 55 (9th Cir.1995).
 
 
 27
 Neither the Supreme Court nor this Circuit has determined what scope of First Amendment protection is to be given a public college professor's classroom speech. We decline to define today the precise contours of the protection the First Amendment provides the classroom speech of college professors because we conclude that the Policy's terms were unconstitutionally vague as applied to Cohen in this case.
 
 
 28
 It is fundamental that statutes regulating First Amendment activities must be narrowly drawn to address only the specific evil at hand. Broadrick v. Oklahoma, 413 U.S. 601, 611-612, 93 S.Ct. 2908, 2915-2916, 37 L.Ed.2d 830 (1973). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). This Court, in a case involving the out-of-class speech of a university professor, stated that "when a statute or regulation by its vagueness or overbreadth threatens to deter the exercise of first amendment freedoms, we require of it greater precision and specificity than would be necessary to fulfill fifth or fourteenth amendment due process requirements." Adamian v. Jacobsen, 523 F.2d 929, 932 (9th Cir.1975).
 
 
 29
 There are three objections to vague policies in the First Amendment context. First, they trap the innocent by not providing fair warning. Second, they impermissibly delegate basic policy matters to low level officials for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, a vague policy discourages the exercise of first amendment freedoms. See Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222 (1972). "[W]here the guarantees of the First Amendment are at stake the [Supreme] Court applies its vagueness analysis strictly." Bullfrog Films Inc. v. Wick, 847 F.2d 502, 512 (9th Cir.1988).
 
 
 30
 In this case, the College punished Cohen based on his teaching methods under the provision of the Policy which prohibits conduct which has the "effect of unreasonably interfering with an individual's academic performance or creating an intimidating, hostile, or offensive learning environment." Cohen, admittedly, uses a confrontational teaching style designed to shock his students and make them think and write about controversial subjects. He assigns provocative essays such as Jonathan Swift's "A Modest Proposal" and discusses controversial subjects such as obscenity, cannibalism, and consensual sex with children. At times, Cohen uses vulgarities and profanity in the classroom and places substantial emphasis on topics of a sexual nature.
 
 
 31
 We do not decide whether the College could punish speech of this nature if the Policy were more precisely construed by authoritative interpretive guidelines or if the College were to adopt a clearer and more precise policy. Rather, we hold that the Policy is simply too vague as applied to Cohen in this case. Cohen's speech did not fall within the core region of sexual harassment as defined by the Policy. Instead, officials of the College, on an entirely ad hoc basis, applied the Policy's nebulous outer reaches to punish teaching methods that Cohen had used for many years. Regardless of what the intentions of the officials of the College may have been, the consequences of their actions can best be described as a legalistic ambush. Cohen was simply without any notice that the Policy would be applied in such a way as to punish his longstanding teaching style--a style which, until the College imposed punishment upon Cohen under the Policy, had apparently been considered pedagogically sound and within the bounds of teaching methodology permitted at the College.
 
 B. Qualified Immunity
 
 32
 "We review de novo a district court's decision on qualified immunity in a section 1983 action." Newell v. Sauser, 79 F.3d 115, 117 (9th Cir.1996).
 
 
 33
 The doctrine of qualified immunity shields public officials performing discretionary functions from personal liability under certain circumstances. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As the Supreme Court explained in Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Id. at 635, 107 S.Ct. at 3036 (citations omitted) (quoting Harlow, 457 U.S. at 818, 819, 102 S.Ct. at 2738, 2738-2739). Thus, government officials performing discretionary functions, such as, in this case, demoting, evaluating and disciplining Cohen, are entitled to qualified immunity from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Lindsey v. Shalmy, 29 F.3d 1382, 1384 (9th Cir.1994). The relevant inquiry is whether the defendants reasonably could have believed that their conduct was lawful "in light of clearly established law and the information [that they] possessed." Baker v. Racansky, 887 F.2d 183, 187 (9th Cir.1989) (internal quotations omitted). For a right to be clearly established, it must be " 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent.' " Id. at 186 (quoting Anderson, 483 U.S. at 639-640, 107 S.Ct. at 3039). It is the plaintiff's burden to prove that the right that the defendants violated was clearly established at the time of the alleged misconduct. Id.
 
 
 34
 The legal issues raised in this case are not readily discernable and the appropriate conclusion to each is not so clear that the officials should have known that their actions violated Cohen's rights.
 
 III.
 
 35
 We REVERSE IN PART that aspect of the district court decision which held that the imposition of discipline upon Cohen did not violate the First Amendment and REMAND the case so that the district court may enjoin the College officials from further implementing any remaining discipline and requiring that all references to the disciplinary decision be removed from Cohen's personnel file. We AFFIRM IN PART that aspect of the district court's judgment which held that the individual officials were qualifiedly immune. Cohen shall recover his costs on appeal.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 No other professor at the College is required to provide such a syllabus