No. 77,117

EKAN PROPERTIES, *Appellee*, v. JOHN WILHM, *Appellant*.

(939 P.2d 918)

Opinion filed May 30, 1997.

*R. Greg Wright*, of Carpenter Professional Association, of Topeka, argued the cause, and *Edwin P. Carpenter*, of the same firm, was with him on the brief for appellant.

*Robert E. Hiatt*, of Topeka, argued the cause, and *Larry T. Hughes*, of Topeka, was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: The question in this case is: As between Ekan Properties and John Wilhm, who is entitled to a partial refund of ad valorem taxes paid for the tax years 1989, 1990, and 1991?

Highly summarized, the facts are as follows: Wilhm was a general partner in a partnership which owned real estate in Shawnee

County subject to a mortgage. The Resolution Trust Corporation (RTC) ultimately became conservator for the mortgage holder.

The partnership paid, with the appropriate protests pursuant to K.S.A. 79-2005, part of the ad valorem taxes on the property for the years 1989, 1990, and 1991. The partnership paid what turned out to be 33.33% of the taxes for 1989, 42.06% of the taxes for 1990, and 21.97% of the taxes for 1991. That percentage of the tax refund is not in dispute. Ekan Properties made no claim to that percentage. The trial court awarded that percentage to Wilhm, and that percentage is not an issue on appeal.

On December 14, 1990, RTC filed a petition for mortgage foreclosure. On December 30, 1991, Wilhm filed for bankruptcy, listing RTC as a creditor. No one questioned whether the debt to RTC could be discharged. The only taxes paid to this point were not subject to refund because the partnership had only paid a percentage of the ad valorem taxes assessed, and this amount was due whether the tax protest was successful or not. Accordingly, there was apparently no reason at that time to list the potential refund as an asset in the bankruptcy case. Wilhm was discharged in bankruptcy on June 18, 1992.

On May 18, 1992, a decree of mortgage foreclosure was issued by the trial court in favor of RTC against the partnership in the amount of $617,573.19. The decree ordered the sheriff of Shawnee County to sell the property.

The property was sold at public auction on December 8, 1992, to RTC. From the proceeds of the sale, the sheriff paid back taxes for 1990, 1991, and 1992 in the total amount of $83,451.01. On December 18, 1992, the sale was confirmed and the sheriff was ordered to execute and deliver a sheriff's deed to RTC. That was accomplished, and the deed was filed of record on March 15, 1993.

On February 17, 1993, the Board of Tax Appeals (BOTA) issued an order adjusting the 1991 valuation of the property downward from $731,900 to $461,367. In March 1993, BOTA refused to lower the valuation of the property for tax years 1989 and 1990, despite a stipulation between Shawnee County and the partnership as to the actual value of the property. The Shawnee County District Court reversed BOTA and subsequently lowered the 1989 valua-

tion of the property from $817,600 to $461,367, and the 1990 valuation from $739,500 to $461,367.

On May 24, 1993, Ekan Properties purchased the property from RTC at a public auction. Both a purchase and sale agreement and an assignment and assumption agreement were executed by RTC and Ekan Properties. A warranty deed was executed and filed of record on July 12, 1993.

On July 21, 1993, pursuant to the order of confirmation, the amount of $39,939.54, from the proceeds of the sheriff's sale of the property, was used to pay for part of the ad valorem taxes due for tax year 1989.

On July 30, 1993, the Shawnee County Treasurer issued three checks totalling $43,621.78 to the partnership, refunding a portion of the ad valorem taxes paid for the years 1989, 1990, and 1991.

Ekan filed suit against Wilhm and a number of unnamed John Does, claiming it was entitled to a percentage of the refunded taxes in the amount of $29,422.32. The percentage of the refund requested was equivalent to the percentage of the ad valorem taxes paid by RTC and/or Ekan on the property for the years in question. Wilhm answered with a general denial and alleged that any claim against him was discharged in bankruptcy.

Wilhm filed a motion for summary judgment, along with a statement of uncontroverted facts and an affidavit supporting these facts. Ekan agreed with most of the facts Wilhm set out. The trial court heard Wilhm's motion for summary judgment and denied it. The trial court, *sua sponte*, granted summary judgment to Ekan.

The trial judge reasoned as follows:

"The material facts of this case are undisputed. The RTC filed a Petition for Mortgage Foreclosure against the Partnership that was partially owned by the defendant; this forced a sheriff's sale of the property owned by the Partnership. The RTC purchased the property from the sheriff's sale. *Part of the proceeds from this sale were used to pay the expenses of the sale and the outstanding property taxes due on the property. The RTC was entitled to, and did receive the remaining proceeds from the sale. Therefore, the RTC was entitled to a portion of any property tax refund that was related to the taxes paid from the proceeds of the sheriff's sale, since the RTC was entitled to receive all proceeds not used to pay expenses of the sale or taxes on the property. However, when RTC sold the property to the Plaintiff, all of the benefits and burdens associated with the prop-*

*erty transferred to the Plaintiff.* The RTC Kansas Special Warranty Deed transferred the real property, tenements, hereditaments and appurtenances thereto. Also, the Assignment and Assumption Agreement that was executed by the RTC and the Plaintiff states: 'The "Intangible Property" includes, without limitation, the Leases, Contracts, Deposits, Permits, General Intangibles, name, and utility Deposits listed on Exhibit No. 2.' This indicates that the 'intangible property' that was transferred in this sale is not limited to the items listed in detail. *Consequently, the RTC transferred all of the intangible property associated with the property to the Plaintiff. Thus, the right to receive a portion of the property tax refund, an intangible asset, was transferred to the Plaintiff. Therefore, the Plaintiff stands in the shoes of the RTC and is entitled to the same percentage of the tax refund that the RTC would be entitled to if it had not sold the property.*

"Since the Defendant did not pay 100% of the property taxes due for the tax years in question, he will be unjustly enriched if he is allowed to keep 100% of the tax refund for these years. The only equitable way to divide the property tax refund is to divide it among each party who either 1) paid a portion of the property tax or 2) stands in the shoes of a party who paid a portion of the property tax. The percentage of the tax refund each party should receive is identical to the percentage of the property tax each party paid. Here, the Defendant paid 33.33% of the tax for 1989, 42.06% of the tax for 1990, and 21.97% of the tax for 1991. Therefore, the Defendant is entitled to keep $14,202.85 of the property tax refund. The Plaintiff is entitled to restitution from the Defendant for the remaining $29,418.93.

"The Defendant makes several arguments as to why he is entitled to keep the entire tax refund. First, he argues the Plaintiff is claiming a right to tax refunds that are part of the Partnership's assets that were not transferred through the foreclosure and sale of the property. This is incorrect, the Plaintiff is not claiming the Defendant transferred their right to a percentage of the tax refund through the foreclosure sale. The Plaintiff only claims that the Defendant received more than they had a right to receive.

"Second, the Defendant argues that the Plaintiff did not acquire a right to the property tax refund from the RTC. The Defendant claims that the RTC can only sell what they own, and that the RTC did not purchase the right to a tax refund at the sheriff's sale. The Defendant is partially correct, the RTC did not purchase the right to the tax refund at the sheriff's sale. However, the RTC acquired this right to a refund when the proceeds from the sale were used to pay the outstanding taxes on the property. The RTC had a right to the proceeds of the sheriff's sale regardless of who purchased the real estate at the sheriff's sale. Then, as previously mentioned, the RTC sold its entire interest in all of the benefits and burdens associated with the real estate to the Defendant, which, the Court holds, includes the right to a property tax refund related to the property. This right to a property tax refund is an intangible asset associated with the property. By using the language 'without limitation,' the Assignment and Assumption Agreement makes it clear that the intangible property included in the sale of the property was not

limited to the specific items listed in the Assignment and Assumption Agreement. In the Court's view, this language indicates that the RTC intended to sell, and the Plaintiff intended to buy, every asset associated with the property, which includes the right to a tax refund on the property.

"Third, the Defendant claims the RTC waived its right to a tax refund when it paid a portion of the taxes without protesting such payments. This is also an incorrect claim. The Kansas Supreme Court has held taxpayers are not required to protest the taxes paid for the second half of the year, if the payment for the first half of the year is accompanied by a protest that adequately protest[s] the taxes for the entire year. *Sohio Petroleum Co. v. Board of County Commissioners*, 201 Kan. 315, at 324-25 (1968). In this case, the Partnership protested the tax for the entire year when it paid the first installment of taxes due for the year. This adequately protested the tax for the entire year. As a separate ground, the Court further finds the Defendant would be unjustly enriched if the Court denied the Plaintiff a right to the tax refund because it, or the party whose place it has taken, failed to protest the taxes when making the payment.

"Fourth, the Defendant claims the Plaintiff is barred from collecting on this claim as a result of the 'Discharge of Debtor' filed within the Defendant's bankruptcy proceedings. This claim is incorrect. Bankruptcy does not discharge claims that arise from conduct or events that take place after the debtor's discharge is entered. Here, the 'Discharge of Debtor' is dated June 18, 1992. The event that gave rise to this claim occurred in July 1993, over a year after the 'Discharge of Debtor' was granted. This event was when the Defendant received the entire tax refund, a portion of which he was not entitled to keep. Therefore, this claim is not discharged by the Defendant's bankruptcy.

"Finally, the Defendant claims that Carpenter Professional Association, the company that the defendant's attorney is associated with, has a right to the tax refund that is superior to any other claim. This lawsuit is to determine the rights and obligations of the Plaintiff and the Defendants. This lawsuit is not to determine the rights and obligations of the Defendant's attorney or the company he is associated with. The Court need not comment further on this claim since Carpenter Professional Association is not the Plaintiff or Defendant in this lawsuit.

"Here, the Defendant is seeking summary judgment against the Plaintiff. The Court finds there is no material fact that is controverted. However, the Court holds the uncontroverted material facts do not entitle the Defendant to summary judgment as a matter of law. For all of the aforementioned reasons, the Court denies the Defendant's motion for summary judgment. Furthermore, sua sponte, the court, as a matter of law, grants summary judgment in favor of the Plaintiff. The Plaintiff is entitled to restitution from the Defendant in the amount of $29,418.93, plus cost[s] and interest, at the statutory rate mandated by K.S.A. 16-204, from the date of this judgment until this judgment is satisfied." (Emphasis added.)

Wilhm filed a motion to alter or amend judgment, and the trial judge further explained his reasoning, in pertinent part, as follows:

"1) The Defendant first contends the Plaintiff acquired only the real property from the RTC by and through the purchase and sale agreement dated May 24, 1993, and the subsequent deed filed July 12, 1993. The Defendant states that the RTC received only real estate when it foreclosed on the property owned by the Plaintiff and his partners. Therefore, since the RTC did not acquire a right to a tax refund through the foreclosure sale of the Property, it could not convey a right to a tax refund to the Plaintiff.

"The Defendant's reasoning is flawed because it requires the Court to accept that the only way the RTC could acquire a right to tax refund is by acquiring it from the Defendant. Here, in order to clear the title to the real estate, the delinquent taxes were paid from the proceeds of the foreclosure sale of the real estate. Had the Defendant not owed these outstanding property taxes, the RTC would have been entitled to receive all of the proceeds from the sale. Therefore, any refund of these proceeds that were used to pay delinquent taxes belonged to the RTC. The RTC did not acquire a right to a tax refund from the Defendant; the RTC acquired a right to a tax refund when proceeds, to which it had a right to, were used to pay the Defendant's delinquent taxes. The RTC's right to a tax refund was never an asset owned by the Defendant.

"2) The Defendant's next contention is that the Court, using its equitable powers, erred in failing to apportion to the Plaintiff its respective share of the attorneys' fees incurred by the partnership in seeking the tax refunds. The Defendant states that 'but for the Partnership's tenacity and economic support, there would have been no tax refunds whatsoever.'

"The Defendant apparently wants the Court to forget that but for the Partnership's problems and lack of economic support, there would never have been a tax liability that needed to be satisfied out of the foreclosure sale proceeds. Had it not been for the $87,387.76 paid out of these proceeds to satisfy the delinquent tax debt, there would be no tax refund at all.

"The Defendant also claims 'that the Court neglects its own finding of fact in that the Defendant did not receive any of the tax refund proceeds.' By taking a closer look, the Defendant will see that the Court stated '(n)either the Defendant nor the Partnership retained any of the monies refunded from the three ad valorem tax protests.' There is a big difference between never receiving monies and not retaining monies. The Defendant constructively received the monies when his attorney, his agent, received the monies.

"Moreover, the Defendant claims that he was not unjustly enriched since he did not receive the tax refund. As discussed above, the Defendant did constructively receive the tax refund. The Defendant received a benefit when he chose to satisfy his outstanding attorney fees with this refund. The Court will not question the Defendant's or his attorney's business decision to spend in excess of $43,621 to recover a possible refund of $43,621; however, neither will it burden the Plaintiff, who took no part in the decision to spend these monies, with these fees."

Wilhm appealed the trial court's ruling to the Court of Appeals, and the case was transferred to this court pursuant to K.S.A. 20-3018(c).

On appeal, Wilhm alleges that in the sheriff's sale, RTC only received the property. According to Wilhm, RTC did not receive any right to a tax refund which might be forthcoming. Since RTC did not receive this right to a tax refund, Wilhm contends that RTC could not have passed the right on to Ekan. Further, Wilhm contends that even if Ekan has a valid claim against him for a portion of the refund checks, the claim should be discharged due to his bankruptcy discharge which occurred on June 18, 1992.

The trial court's granting of summary judgment, based on undisputed facts, is a ruling of law and may be reviewed de novo by this court. See *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to judgment as a matter of law." *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

Wilhm misunderstands the trial court's ruling. The trial court did not rule that the purchaser of property at a foreclosure sale (RTC in this case) would receive (or purchase) rights in a tax refund simply because some of the money the purchaser paid to buy the property went to the county treasurer to pay off overdue taxes on the property. Rather, the court pointed out that a mortgagee of property in a foreclosure sale (also RTC in this case) is entitled to all the proceeds of the sale. However, the mortgagee (RTC) had to apply proceeds of the sale, which it was entitled to, to the payment of any overdue real property taxes on the foreclosed property before it could apply proceeds of the sale to its own judgment owing from the mortgagor (the partnership). See K.S.A. 79-419; *Ekblad, Adm'r, v. Hanson*, 85 Kan. 541, 547, 117 Pac. 1028 (1911). Thus, if the mortgagee (RTC) uses the proceeds of the sale to pay off taxes on the property, and the taxes are later found to be overpaid and refunded, then the refunded money constitutes proceeds of the sale which were not needed to pay off overdue taxes on the property. As such, the proceeds should have gone to the mortgagee (RTC) so it could apply the money to its judgment against the mortgagor (the partnership). If some of the money used to pay off

the overdue taxes is refunded, it is proceeds of the sale which should be applied to the mortgagee's judgment, and the mortgagee who paid off the overdue tax bill is entitled to the money. The trial court did not err in ruling that the mortgagee/RTC was entitled to a portion of the tax refund.

The trial court's conclusion that Ekan is entitled to a percentage of the refund is supported by *Palmer v. First Nat'l Bank of Kingman*, 10 Kan. App. 2d 84, 692 P.2d 386 (1984). *Palmer* set forth the following rule:

"One who pays a tax voluntarily [for another], that is, without compulsion or duress, has no valid claim for its repayment. . . . In contrast, where one makes a payment under duress, a valid claim for repayment [a reimbursement from an overdue taxpayer if the tax is properly paid or a refund from the taxing authority if the tax is illegal] does exist."

Here, RTC, as the mortgagee, was involuntarily required to pay off any overdue property taxes on property out of the proceeds of the foreclosure sale. See K.S.A. 79-419; *Ekblad*, 85 Kan. at 547.

The trial court divided the refund, awarding a percentage of the refund to the partnership according to the percentage of the tax bill which the partnership paid and awarding a percentage of the refund to RTC according to the percentage of the tax bill which RTC paid out of the proceeds of the foreclosure sale. This makes sense because both the partnership and RTC paid a portion of the improper tax based on an improper assessment and both were entitled to a portion of the refund. However, the County paid the entire refund to the partnership. Thus, RTC had a claim against the partnership, or a general partner of the partnership, for a percentage of the refund, based on the percentage of the tax bill which RTC paid. This right arose out of RTC's involuntary payment of the overdue tax bill from the proceeds of the foreclosure sale, which proceeds RTC was entitled to in satisfaction of its judgment against the partnership. The trial court did not err in finding that the right to receive ad valorem tax refunds vested in RTC pursuant to its payment of real property taxes as a condition of the mortgage foreclosure proceedings.

RTC did not buy this right to a tax refund from the partnership when it purchased the property from the partnership in the fore-

closure transaction. Thus, all of the partnership's arguments rebutting this theory are irrelevant.

The trial court also determined that RTC conveyed its right to receive the property tax refunds to Ekan through a written contract when Ekan bought the property from RTC. This is a question of law.

"The legal effect of a written instrument is a question of law for the court to decide. On appeal, a written instrument or contract may be construed and its legal effect determined by the appellate court regardless of the construction made by the trial court." *Galindo v. City of Coffeyville*, 256 Kan. 455, Syl. ¶ 2, 885 P.2d 1246 (1994).

Wilhm argues that a grantor (RTC) can only convey to a grantee (Ekan) what the grantor owns. See *Ames v. Brooks*, 179 Kan. 590, 593, 297 P.2d 195 (1956) ("[A] grantee in a deed acquires no greater title than his grantor had."). Wilhm then contends that RTC only received title to the real property from the sheriff's foreclosure sale; it did not receive any personal property right or intangible property right to ad valorem tax refunds that might be forthcoming. Since RTC did not own this right to tax refunds, Wilhm argues, then RTC could not convey this right to Ekan. Ekan could not lawfully acquire any greater interest than what RTC owned; thus, according to Wilhm, Ekan could not have received from RTC the rights to the ad valorem tax refund.

Wilhm's argument is unpersuasive. Basically, Wilhm argues that RTC never received the right to the tax refund; thus, RTC could not have conveyed this right to Ekan. However, RTC did receive the right to a tax refund by using the proceeds of the foreclosure sale to pay off overdue property taxes on the foreclosed property. Since RTC owned this right to a refund, RTC could have conveyed the right to Ekan. The question is, did it? Wilhm did not brief the issue of whether RTC properly passed the refund right to Ekan; thus, this issue is considered waived. See *Pope v. Ransdell*, 251 Kan. 112, 119, 833 P.2d 965 (1992) ("Where the appellant fails to brief an issue, that issue is waived or abandoned.").

The trial court found that RTC validly conveyed the refund right to Ekan, based on the warranty deed and the assignment and assumption agreement. We agree.

The trial court also found that Ekan was not barred from bringing a claim against Wilhm, even though a "discharge of debtor" had been filed in Wilhm's bankruptcy proceedings.

Wilhm takes issue with this finding, arguing that Ekan's allegation of liability against Wilhm arises solely from Ekan's purchase of the property and the refund right from RTC. Since the debts he owed to RTC were discharged in the bankruptcy proceedings, Wilhm asserts that any obligation he owed to RTC which Ekan purchased from RTC is also discharged, even though a new entity owns the obligation. Thus, Wilhm claims that his personal Chapter 7 bankruptcy and his discharge of debtor operate as affirmative defenses to bar any claim brought by Ekan against him. See K.S.A. 60-208(c). In support of this argument, Wilhm cites to § 727 of the Bankruptcy Code, entitled "Discharge," which provides:

"(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section *discharges the debtor from all debts that arose before the date of the order for relief* under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title." 11 U.S.C. § 727(b) (1995). (Emphasis added.)

We disagree. The Historical and Revision Notes to 11 U.S.C. § 727(b) provide that "the discharge granted under this section discharges the debtor from all debts that arose *before* the date of the order for relief." (Emphasis added.) Thus, the question becomes whether the debt at issue—the obligation to pay a portion of the tax refund to Ekan, which is standing in the shoes of RTC—arose before or after Wilhm's discharge was granted on June 18, 1992. The question of when a debt arises is a question of fact. In a summary judgment appeal, all questions of fact are to be viewed in the light most favorable to the party who seeks to reverse the summary judgment ruling—in this case, Wilhm. See *Mitzner*, 257 Kan. at 260-61.

The bankruptcy court granted Wilhm a discharge from all debts on June 18, 1992. All of Wilhm's debts which arose before June 18, 1992, were discharged, including his personal debt to RTC for

the mortgage. The sheriff sold the foreclosed property on December 8, 1992. RTC used some of the proceeds of the sale to pay off the outstanding ad valorem taxes due on the property. At this point in time, RTC gained an interest in any property tax refund which might be forthcoming. Looking at the facts in the light most favorable to Wilhm under a summary judgment standard, this is the earliest date that Wilhm's debt to RTC for a portion of the tax refund money could have arisen. This occurred 6 months *after* Wilhm's debts had been discharged by the bankruptcy court. Thus, this debt to RTC for a portion of the tax refund could not have been discharged by the bankruptcy proceedings, even if the debt arose at this earliest possible date. As such, Wilhm's discharge of debts on June 18, 1992, pursuant to 11 U.S.C. § 727(b), did not affect Ekan's claim seeking a portion of the tax refund from Wilhm. The trial court's ruling on this issue is affirmed.

Wilhm also takes issue with the trial court's "equitable" remedy. Wilhm contends that the trial court granted Ekan a windfall because neither RTC nor Ekan expended any time, effort, attorney fees, or expenses in the tax protest. On the other hand, Wilhm points out, the partnership spent money in excess of the total tax refund to pay the fees of the attorneys who litigated the tax protest. According to Wilhm, without the partnership's tenacity and economic support, there would have been no tax refund at all. Thus, Wilhm asks this court to take into account the money expended by the partnership to fund the tax protest and award all of the tax refund money to him, as a general partner of the partnership. To hold otherwise, Wilhm asserts, will result in a windfall to Ekan because Ekan neither paid any of the taxes on the property nor funded any of the tax protest litigation; all Ekan did was purchase the property from RTC.

On the other hand, Ekan points out that RTC obtained its right in the tax refund by paying the outstanding property taxes due on the foreclosed property out of the proceeds of the foreclosure sale, and Ekan obtained its right in the tax refund by purchasing the right from RTC along with the property. According to Ekan, it is Wilhm who seeks a windfall by receiving a full tax refund even though Wilhm did not pay the taxes in full. Ekan asserts that such

windfall would unjustly enrich Wilhm and would violate public policy. Thus, Ekan asks this court to affirm the trial court's ruling.

Viewing the equities of this case in the light most favorable to Wilhm offers him no comfort. Since RTC paid a percentage of the taxes, RTC was entitled to a percentage of the refund. RTC was also entitled to sell its interest in the refund to a third party, Ekan. Such sale should not affect the amount of tax refund which Wilhm or the third party who stands in RTC's shoes (Ekan) is entitled to. It is true that Wilhm, as a general partner for the partnership, had the expense of litigating the tax protest case which RTC and Ekan did not have. However, if RTC had not paid the overdue taxes on the property during the foreclosure proceedings, Wilhm would not have been entitled to any refund at all. Ekan, as RTC's successor, should not have to receive a smaller refund than it is entitled to simply because Wilhm spent more money to litigate the tax protest case than Wilhm should have expected to receive in refund. Ekan is entitled to receive a percentage of the tax refund based on the percentage of the ad valorem property taxes that RTC paid. Since the partnership received all of the refund money, Wilhm, as a general partner of the partnership, should pay Ekan $29,422.32.

Affirmed.