No. 81,835

ALBERT GOLDBARTH, *Appellant,* v. KANSAS STATE BOARD OF REGENTS, WICHITA STATE UNIVERSITY, BARBARA BOWMAN, and BOBBY PATTON, *Appellees.*

(9 P.3d 1251)

Opinion filed July 26, 2000.

*M. Kathryn Webb,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause and was on the briefs for appellant.

*Wyatt M. Wright,* of Foulston & Siefkin, L.L.P., of Wichita, argued the cause, and *James D. Oliver,* of the same firm, was with him on the brief for appellee Barbara Bowman.

*Wm. Scott Hesse,* assistant attorney general, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the briefs for appellees Kansas State Board of Regents, Wichita State University, and Bobby Patton.

The opinion of the court was delivered by

SIX, J.: This case arises in the context of a perceived clash between freedom of speech in the classroom and a university's responsibility to enforce its sexual harassment policy. Two female graduate students at Wichita State University (WSU) filed grievances against the plaintiff, Albert Goldbarth, a tenured WSU professor. Goldbarth sued WSU, the Kansas State Board of Regents (the Regents) and two WSU administrators. He alleged violations under 42 U.S.C. § 1983 (1994) (color of state law) and other claims, including deprivation of his First Amendment free speech right. He objected to the way WSU handled the grievances. The district court dismissed Goldbarth's petition on defendants' motion under K.S.A. 60-212(b)(6) for failure to state a claim upon which relief could be granted. Goldbarth appeals. We affirm.

Two threshold observations assist in setting the stage for our discussion of the issues. First, contrary to all other factual situations in the free speech-sexual harassment cases relied upon by Goldbarth, WSU found that no sexual harassment had occurred. No discipline was imposed or recommended. Second, Goldbarth has selected a state court as the forum to enforce his federal claims.

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our own motion).

The issues are whether the district court erred: (1) by refusing to allow Goldbarth to submit materials outside the pleadings, and (2) in holding that Goldbarth has failed to state a claim under his First Amendment (free speech) and 42 U.S.C. § 1983 claims.

The first issue, which is procedural, measures the manner in which the district court disposed of the case. The second and dominant issue requires our review of the district court's rationale for its K.S.A. 60-212(b)(6) dismissal. In conducting our review of the dominant issue, we examine only the well-pleaded facts of Goldbarth's petition. See *Ling v. Jan's Liquors*, 237 Kan. 629, 630, 703 P.2d 731 (1985). We are required to assume that the facts alleged by Goldbarth are true. We must also decide whether the pleaded facts and inferences state a claim, not only on the theories that were espoused by Goldbarth, "but [also] on any possible theory we can divine." *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 231, 805

P.2d 1244, *rev. denied* 248 Kan. 996 (1991). Our factual statement that follows is limited to the petition and its attachments.

## FACTS

Goldbarth is the WSU English Department's "Distinguished Professor of Humanities." He taught an advanced graduate level poetry workshop in the 1996 fall semester. Two workshop students, both female, filed grievances against Goldbarth alleging sexual harassment.

In September 1996, WSU enacted its "Policy Prohibiting Sexual Harassment" (the Policy). The Policy appeared in the faculty handbook. The grievances at issue here were the first to be addressed under the Policy.

WSU designated the Director of the Affirmative Action Office, defendant Barbara Bowman, to investigate the grievances. Bowman ultimately issued what Goldbarth calls "findings" on the allegations. In a brief memorandum to Goldbarth dated June 10, 1997, Bowman said:

"Thank you for meeting with me on June 4 in an effort to mediate Paula niBride's grievance against you. I regret that an impasse resulted and we were unable to resolve it and bring closure.

"As I explained at that time, *the information I collected appears not to support Ms. niBride's charge of sexual harassment.* However, it is my professional opinion that many of the behaviors you reportedly exhibited, in and out of the classroom, appear to have no educational value and could be considered inappropriate and unprofessional."

"The University's Sexual Harassment Policy, Part IV- B-3-a states: 'In the event that informal procedures fail to resolve a complaint, either party may request a formal hearing.' Note that the process directs that the complaint be filed with the Chairperson of the Rules Committee (Faculty Grievance Procedures, number 3, page 13).

"If you should have other thoughts on how this complaint might be resolved without a formal hearing, please let me know.

"cc: Paula niBride." (Emphasis added.)

Bowman's investigation spanned 6 months. Goldbarth contends that the Policy did not authorize Bowman to investigate or issue "findings." He alleges that the investigation violated the confidentiality portion of the Policy. Goldbarth also asserts that Bowman "advised, directed and encouraged" the two students to appeal her

decision to the "Formal Hearing" stage. One student, Paula ni-Bride, decided to appeal Bowman's decision.

The President-elect and President of the faculty senate, recognizing that the charge of sexual harassment was not supported by Bowman's investigation, notified niBride that her grievance would not be referred to a faculty panel for review.

This decision was reversed. niBride and Goldbarth were informed that a formal hearing would be called "[i]n response to the request by Dr. Bobby Patton, [WSU's] Vice President for Academic Affairs." Goldbarth contends that Patton unilaterally decided that a formal hearing would be held and instructed the faculty senate to proceed.

Eleven days later, on October 20, 1997, Goldbarth sued the Regents, WSU, Bowman and Patton (the latter two both individually and in their official capacities). The Goldbarth petition asserts five claims: (1) violation of his procedural and substantive due process rights; (2) violation of his First Amendment right to free speech; (3) deprivation of his First Amendment and due process rights under color of state law, 42 U.S.C. § 1983; (4) defamation (against Bowman); and (5) negligent retention and supervision. The petition also sought an order permanently enjoining WSU from initiating, establishing, or conducting a formal hearing of the grievance.

Filed simultaneously with the petition was an application for a temporary injunction and a temporary restraining order. Goldbarth alleged imminent harm if the formal hearing was allowed to proceed. The district court granted the temporary restraining order the day the petition was filed.

The defendants moved to dismiss the petition under K.S.A. 60-212(b)(6). The district court sustained defendants' motions, with the exception of the defamation claim against Bowman. Goldbarth has voluntarily dismissed the defamation claim with prejudice.

## OUR SHOW CAUSE ORDER

In his appeal, Goldbarth briefs only the free speech First Amendment and 42 U.S.C. § 1983 issues. His other claims are abandoned. See *Ekan Properties v. Wilhm*, 262 Kan. 495, 503, 939 P.2d 918 (1997).

We issued a show cause order on April 25, 2000, directing the parties

"to show cause by written response to be filed on or before Monday, May 8, 2000, why Appellant's appeal as to his Section 1983 claims against the State of Kansas (*i.e.*, the Kansas Board of Regents and Wichita State University) and against Defendants Barbara Bowman and Bobby Patton, in their official capacities, should not be dismissed pursuant to *Will v. Michigan Department of State Police*, 491 U.S. 58, 64, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989).

"The parties are further directed to show cause by written response to be filed on or before May 8, 2000, why Appellant's appeal as to any remaining constitutional claims against the State of Kansas should not be dismissed in light of the inherent sovereign immunity of the State of Kansas. See, *e.g.*, *Alden v. Maine*, 527 U.S. 706, 144 L. Ed. 2d 636, 119 S. Ct. 2240 (1999)."

The defendants filed timely responses. Goldbarth was granted additional time to respond. He did not do so.

## DISCUSSION

Goldbarth's attempt to enforce his federal claims in state court presents issues of first impression. We next undertake an analysis of his appellate contentions.

### Materials Considered by the District Court

On the procedural issue, Goldbarth asserts that the district court improperly considered material extraneous to his petition when ruling on defendants' K.S.A. 60- 212(b)(6) motion. He argues that: (1) the district court considered defendants' submissions but refused to consider additional materials he submitted, (2) the K.S.A. 60- 212(b)(6) motion should have been viewed as one for summary judgment, and (3) he should have been given the opportunity to present his evidence.

Goldbarth's argument lacks merit. K.S.A. 60-212(b) says if "matters outside the pleading are presented to *and not excluded by the court*, the motion [to dismiss for failure to state a claim upon which relief can be granted] shall be treated as one for summary judgment." (Emphasis added.) A review of the transcript and the district court's thoughtful comprehensive decision reveals that the parties placed additional materials before the district court; how-

ever, the court ultimately decided not to consider these materials. The district court followed 60-212(b)(6) in resolving the motions.

The district judge addressed the 60-212(b)(6) procedural issue both during the hearing and in his memorandum decision. When the hearing began, the judge said that he had reviewed all materials submitted in the case. He requested that the parties comment on the procedural posture of the case. He also asked whether they wished to submit the case on summary judgment rather than under 60-212(b)(6). The defendants presented their arguments first. Defendant Bowman introduced, under seal, the complaints of the two female students. When it came time for Goldbarth to present his arguments, his counsel sought the introduction of additional materials in the form of his response to the grievances filed against him. The defendants objected. The district judge refused to allow Goldbarth's exhibits. The judge determined that he would only consider the petition and its attachments.

The district court memorandum decision said:

"Counsel for plaintiff, during oral argument, argued defendants had placed the case in posture for summary judgment pursuant to K.S.A. 60-212(b)(6) and 60-212(c). . . . The Court interrupted the argument, read case authority, the statutes and arguments presented and returned to the Court with a ruling, pursuant to K.S.A. 60-212(c), excluding all such extraneous matters not contained within plaintiff's petition unless the parties agreed to submit all the same and submit the case in the posture of a summary judgment motion. The offer of the Court was refused. The odd procedural history in that regard is here noted to hopefully make sense of comments and rulings of the Court in properly ruling on this Motion to Dismiss in light of obvious knowledge by all parties, and the Court in some instances, of other and extraneous materials not contained within the governing pleading, plaintiff's petition."

The district judge's knowledge of facts other than those contained in the pleadings is not grounds for a reversal here. He ultimately decided he would not consider documents outside the petition. We find no error in the district court's procedural ruling.

## The Free Speech First Amendment and 42 U.S.C. § 1983 Claims

We now turn to examine the only claims remaining on appeal, Goldbarth's First Amendment rights under the United States Con-

stitution and his 42 U.S.C. § 1983 color of state law claims. Both Bowman and Patton pled absolute and qualified immunity as affirmative defenses. WSU and the Regents assert sovereign immunity as agencies of the State of Kansas.

Before analyzing the qualified immunity issue, we comment on the nature of Goldbarth's claims. For the following reasons, his First Amendment claim may be asserted only against WSU and the Regents. The 42 U.S.C. § 1983 claims may be made only against Bowman and Patton in their individual capacities.

First, Goldbarth acknowledges in his brief that the 42 U.S.C. § 1983 claims only apply to Bowman and Patton in their individual capacities. His official capacity claims fail. They are redundant with the claims against WSU and the Regents. See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304, (1989).

In addition, § 1983 is a remedy available to address the misconduct of *persons* acting under color of state law. See *Hafer v. Melo*, 502 U.S. 21, 27, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991). Goldbarth's § 1983 claims against WSU and the Regents also fail. WSU and the Regents are state agencies. See K.S.A. 74-3201 *et seq.* (the Regents); K.S.A. 76-3a01 *et seq.* (WSU); K.S.A. 76-711(a); K.S.A. 76-712. A state agency is not a "person" under § 1983. See *Will*, 491 U.S. at 64; *Beck v. Kansas Adult Authority*, 241 Kan. 13, Syl. ¶ 1, 735 P.2d 222 (1987). The only exception involves situations where the plaintiff is seeking prospective relief. *Will*, 491 U.S. at 71, n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n.14, 87 L. Ed. 2d 114, 105 S. Ct. 3099 [1985]). Goldbarth's petition asserted a claim for injunctive relief. He was granted a temporary restraining order. However, the district court dissolved the restraining order and Goldbarth has not appealed the dissolution. The exception is not applicable here.

We now turn to the analysis of the two claims that remain for our review: (1) Goldbarth's § 1983 claims against Bowman and Patton individually, and (2) Goldbarth's First Amendment claims against WSU and the Regents (the State of Kansas) as the entities responsible for the adoption of the sexual harassment policy.

Qualified Immunity, Bowman and Patton

Goldbarth objects to the actions Bowman and Patton took in relation to WSU's sexual harassment policy. His claims implicate issues of immunity. We focus on qualified immunity.

Qualified immunity shields public officials from personal liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). See Jilka, *Immunity Under Section 1983,* 65 J.K.B.A. 30 (June-July 1996). Once a defendant raises qualified immunity as an affirmative defense to 42 U.S.C. § 1983 claims, the burden shifts to the plaintiff to show: (1) the violation of a constitutional right and (2) that the constitutional right was "clearly established." *Siegert v. Gilley,* 500 U.S. 226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991); *Latta v. Keryte,* 118 F.3d 693, 697-98 (10th Cir. 1997). Citing *Siegert,* Bowman contends Goldbarth fails to meet either of these burdens. We agree.

A brief review of *Siegert* supports our decision. Siegert was a physician who worked under the supervision of Gilley. Siegert left his employment under threat of termination for dilatory performance. Siegert submitted Gilley's name as a reference. Gilley gave an unfavorable recommendation. Siegert brought a § 1983 suit against Gilley alleging Gilley's defamatory statements deprived him of a constitutionally protected liberty interest (a new job) without due process. The Supreme Court held that Siegert failed to allege the violation of a constitutional right, much less one that was "clearly established." 500 U.S. at 233. The alleged underlying injury was defamation. Although defamation is a tort, it is not a constitutional deprivation. *Siegert* teaches us to initially search Goldbarth's petition for allegations of an underlying constitutional deprivation.

Goldbarth alleges that Bowman's investigation and issuance of findings violated his First Amendment right to free speech. His specific allegations are that: (1) the investigation was unauthorized and improper; (2) it "spanned a period of nearly six months"; (3) "Bowman made misleading, false and defamatory statements" about him in the "findings"; and (4) Bowman "asked leading ques-

tions of the persons being interviewed." Goldbarth also alleges (1) Patton "unilaterally decided" that a formal hearing should be convened and (2) the Policy "discourage[s] the exercise of First Amendment freedoms." Notably, there is no allegation that the Policy has interfered or "chilled" Goldbarth's speech.

Applying *Siegert* we find no allegation here that the *actions* of Bowman and Patton individually resulted in a deprivation of any constitutional right. As in *Siegert*, defamation cannot support a § 1983 claim because it is merely tortious conduct. Bowman's asking leading questions in interviews and conducting a 6-month investigation do not even appear to be tortious conduct. Goldbarth's First Amendment claims are directed at the Policy, for example, its vagueness and overbreadth. Goldbarth fails to link his allegations concerning Bowman and Patton with a First Amendment deprivation. Moreover, it is important to repeat that WSU has taken no adverse action against Goldbarth. WSU merely investigated complaints against him (through Bowman) and attempted to call a faculty panel hearing (through Patton). As the district judge observed: "[Goldbarth] has, with the filing of this action, staged a pre-emptive strike, rather than awaiting the normal process of administrative procedure leading to a final determination by WSU."

Goldbarth " 'must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity.' " *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Romero v. Fay*, 45 F.3d 1472, 1475 [10th Cir. 1995]). He has failed to do either. Goldbarth alleges Bowman's investigation was illegal (an allegation without merit). He does not contend the investigation (if illegal) denied him First Amendment rights. This is a necessary but absent allegation. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1999), said: "The plain wording of the statute contains an element of causation. In other words, a defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation" (dismissing § 1983 first amendment claims against university officials involved in sexual harassment proceedings on qualified immunity grounds).

Goldbarth argues unsuccessfully that an investigation alone may support a § 1983 claim, citing *Patrick v. City of Overland Park, Kan.*, 937 F. Supp. 1491 (D. Kan. 1996). The *Patrick* facts differ substantially from Goldbarth's. Patrick was seeking a congressional seat. He alleged government officials, including the Overland Park Mayor and Chief of Police, illegally conducted a criminal background investigation of him. Patrick asserted the investigation was motivated solely by a desire to obtain damaging information that might be used against him in the congressional campaign.

The federal district court denied the *Patrick* defendants' motions to dismiss for failure to state a claim. The deprivation was the illegal investigation of Patrick's background. Under K.S.A. 22-4707(a), it is illegal for a criminal justice agency to request information on a citizen's criminal record "unless it has a legitimate need for the information." The investigation in *Patrick* was illegal by statute and its purpose illegitimate—to discredit Patrick and to prevent him from holding political office.

An investigation of a sexual harassment claim alone cannot constitute the violation of a constitutional right because federal law requires such an investigation. Under Title IX of the Education Amendments of 1972, 86 Stat. 373, as amended, 20 U.S.C. § 1681 (1994) *et seq.* (Title IX) educational institutions receiving federal funds may be liable for sexual harassment of a student by a teacher. See *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 74-75, 117 L. Ed. 2d 208, 112 S. Ct. 1028 (1992). Title IX is enforceable through an implied private cause of action. See *Cannon v. University of Chicago*, 441 U.S. 677, 683, 60 L. Ed. 2d 560, 99 S. Ct. 1946 (1979). If school officials have actual notice of sexual harassment and fail to act, they will be liable under Title IX. See *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 285, 141 L. Ed. 2d 277, 118 S. Ct. 1989 (1998). Title IX regulations specifically require that each recipient of federal financial assistance designate at least one employee to coordinate its efforts to comply. The recipient carries the responsibility of assuring that no discrimination occurs in any educational program, an assurance that implies allowance of an investigation of any complaint. See 34 C.F.R. § 106.8 (1999). Universities have the right to implement

sexual harassment policies because eradicating sexual harassment is a legitimate goal. *Kracunas v. Iona College,* 119 F. 3d 80, 88 (2d Cir. 1997). Similarly, under Title VII (42 U.S.C. § 2000e [1994] *et seq.*), once an employer receives a complaint of sexual harassment, it must take immediate and appropriate corrective action. 29 C.F.R. § 1604.11(d) and (e) (1999). See also *Gebser,* 524 U.S. at 286-88 (discussing school liability under Titles VII and IX).

Goldbarth makes the alternative argument that, even if an investigation of sexual harassment claims is allowed, Bowman should have known that no such investigation was necessary here. Goldbarth relies on the Department of Education's Office for Civil Rights, Sexual Harassment Guidelines. Goldbarth argues that Bowman should have known the allegations against him fell squarely within the sphere of acceptable classroom conduct. The Guidelines give the following example of the application of free speech rights to allegations of sexual harassment:

"Example 1: In a college level creative writing class, a professor's required reading list includes excerpts from literary classics that contain descriptions of explicit sexual conduct, including scenes that depict women in submissive and demeaning roles. The professor also assigns students to write their own materials, which are read in class. Some of the student essays contain sexually derogatory themes about women. Several female students complain to the Dean of Students that the materials and related classroom discussion have created a sexually hostile environment for women in the class. What must the school do in response?

"Answer: Academic discourse in this example is protected by the First Amendment even if it is offensive to individuals. Thus, Title IX would not require the school to discipline the professor or to censor the reading list or related class discussion." 62 Fed. Reg. 12046 (1997).

According to Goldbarth, this example exonerates him and should have made clear to Bowman that an investigation was unnecessary. Goldbarth's alternative argument also fails. This Guidelines' example was not published until March 13, 1997. Bowman began her investigation in January 1997. WSU has neither disciplined Goldbarth nor censored him. The Guidelines' example does not prohibit an investigation.

Goldbarth also relies on *Silva v. University of New Hampshire,* 888 F. Supp. 293 (D. N.H. 1994), and *Cohen v. San Bernardino Valley College,* 92 F.3d 968 (9th Cir.), *cert. denied sub nom., Bee-*

*man v. Cohen*, 520 U.S. 1140 (1996), for the proposition that the individual conduct of Bowman and Patton may serve as the basis for a First Amendment violation. In *Silva* and *Cohen*, the professor was actually sanctioned by the university and college for classroom speech. Silva was formally reprimanded in writing, later suspended without pay, and then suspended from his teaching duties for a semester. Cohen was formally found to have engaged in sexual harassment and was ordered to provide a syllabus concerning all aspects of his teaching style and methods, to attend a sexual harassment seminar, and to undergo a formal evaluation procedure. The federal courts in both cases ultimately held the sanctions were not justified.

WSU's sexual harassment policy has not been applied to Goldbarth's speech. Patton merely recommended that a faculty panel be convened to hear the complaint. Further, to the extent the Policy has been applied by Bowman, Goldbarth's speech and/or conduct was not found to be in violation of the Policy. Goldbarth has failed to allege the deprivation of a constitutional right.

Even if he had made this allegation, Goldbarth has not met *Siegert's* second inquiry (showing that a constitutional right was "clearly established"). Under *Siegert*, we also inquire whether the deprivation was of a "clearly established" right. In order for a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987). *Gerramone v. Romo*, 94 F.3d 1446, 1451 (10th Cir. 1996), held that there must be "a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." See generally, Meeker, *"Clearly Established" Law in Qualified Immunity Analysis for Civil Rights Actions in the Tenth Circuit*, 35 Washburn L.J. 79 (1995).

*Cohen* illustrates the weakness of Goldbarth's position. *Cohen* involved a college professor who allegedly violated a sexual harassment policy. The Ninth Circuit held the sexual harassment policy was "unconstitutionally vague as applied to Cohen." 92 F.3d at 972.

In finding a violation, *Cohen* observed that the college applied the "nebulous outer reaches" of the policy to Cohen. 92 F.3d at 972. The court also held, however, the college officials were entitled to qualified immunity because the legal issues were not "readily discernable and the appropriate conclusion to each [was] not so clear that the officials should have known that their actions violated Cohen's rights." 92 F.3d at 973. In other words, the officials did not violate any clearly established law when they applied the sexual harassment policy to Cohen. Clearly Bowman and Patton are entitled to qualified immunity.

### Sovereign Immunity, WSU and the Board of Regents

Having disposed of the claims against the individual defendants, we now consider Goldbarth's First Amendment claim against WSU and the Regents, which is essentially a claim against the State of Kansas. Goldbarth alleges WSU's sexual harassment policy, like the policy in *Cohen,* is unconstitutionally vague. Goldbarth's claim has no merit because: (1) the State is immune; (2) Goldbarth has failed to allege that the Policy has chilled *his* speech; (3) the Policy has not been applied to him by the faculty grievance committee; and (4) to the extent the Policy was applied by Bowman, Goldbarth's speech was not found to have violated the Policy.

We focus on the first two of these points. Here, WSU and the Regents have asserted sovereign immunity as a defense. Goldbarth did not respond to our show cause order as to why "any remaining constitutional claims against the State of Kansas should not be dismissed in light of the inherent sovereign immunity of the State of Kansas. See, *e.g., Alden v. Maine,* 527 U.S. 706, 144 L. Ed. 2d 636, 119 S. Ct. 2240 (1999)." We recently discussed *Alden* extensively in *Schall v. Wichita State University,* No. 83,264, filed June 9, 2000. *Alden* addresses state sovereign immunity from suits in state court. In reviewing the constitutional ratification process, *Alden,* in barring a claim under the Fair Labor Standards Act, first determined that one of the key principles behind the formulation of the United States Constitution was that the states should retain their sovereign immunity absent their consent. There is no allegation by Goldbarth that the State has consented to be sued. *Alden* con-

cluded that the sovereign's right to assert immunity from suit in its own courts was a principle so well established that no one conceived it would be altered by the new Constitution. 527 U.S. at 741. *Alden,* 527 U.S. at 723-24, discusses and relies on *Hans v. Louisiana,* 134 U.S. 1, 33 L. Ed. 842, 10 S. Ct. 504 (1890). *Hans* sustained Louisiana's immunity in a private suit arising under the United States Constitution itself. In *Schall,* we affirmed summary judgment in favor of WSU denying Schall's claims against WSU under the Family Medical Leave Act and the Americans with Disabilities Act. We said: "The powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting states to private suits for damages in state courts." *Schall,* 269 Kan. 456, Syl. ¶ 2.

Goldbarth argues that the defense of sovereign immunity was not raised in the district court below and is therefore waived. He fails to recognize that immunity is an issue of jurisdiction, and, as such, we are compelled to address it. See *Edelman v. Jordan,* 415 U.S. 651, 677-78, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974); *Ford Co. v. Dept. of Treasury,* 323 U.S. 459, 465-66, 89 L. Ed. 389, 65 S. Ct. 347 (1945). Here we have a free speech deprivation claim under the United States Constitution seeking damages against the State. Such claims in the federal forum are referred to as *Bivens* actions. See *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 29 L. Ed 2d 619, 91 S. Ct. 1999 (1971) (permitting federal damage claims in federal court directly under the Fourth Amendment although no federal statute authorized the action). Goldbarth has neither advanced a *Bivens* claim nor characterized his suit as a *Bivens* action. Even if he had done so, traveling the *Bivens* route would result in a dead end. See *Sharp v. State,* 245 Kan. 749, 754, 783 P.2d 343 (1989) (refusing to recognize *Bivens* action under Thirteenth Amendment against State of Kansas).

WSU and the Regents are entitled to sovereign immunity.

The district court also held that: (1) Bowman and Patton were entitled to absolute immunity and (2) Goldbarth had failed to exhaust his administrative remedies before filing suit. We have affirmed the district court on other grounds and thus need not reach these two holdings.

Affirmed.